IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LARRY D. WARD and ) | Case No. 08-60766 |
| NINA S. WARD, ) | |
| ) | |
| Debtors. ) | |

ORDER OVERRULING OBJECTION TO CONFIRMATION

Creditor HSBC Bank USA, N.A., as Indenture Trustee for the registered Noteholders of Renaissance Home Equity Loan Trust 2007-1 (HSBC) objects to the Debtors' proposed Chapter 13 Plan because the Plan seeks to enforce, and incorporates the terms of, a prepetition forbearance agreement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons that follow, HSBC's Objection to Confirmation will be OVERRULED.

Debtors filed their Chapter 13 Petition on April 30, 2008. That same day, they filed a Chapter 13 Plan in which they propose to make ongoing monthly payments of $1,673 directly to HSBC. HSBC objects to confirmation of the Plan because, *inter alia*, the Plan failed to list and treat an arrearage to HSBC and failed "to adequately list payment of debt to [HSBC]."

The dispute here involves the postpetition enforceability of a prepetition forbearance agreement. On January 12, 2007, the Debtors signed a note and Deed of Trust in the amount of $256,500. In February 2008, the Debtors were significantly past due on their mortgage payments and, as a result, they entered into a Forbearance Agreement with HSBC's loan

servicer, Ocwen Loan Servicing LLC, on February 15, 2008.  The Agreement stated that the "reinstatement amount" under the original note was $9,291.26 as of February 6, 2008.  According to the Agreement, the Debtors were required to pay $2,257 on or before February 16, 2008, and make two subsequent monthly payments of $1,673.18 each on or before April 1 and May 1, 2008.  Those payments were made.  The final payment, due May 1, was due and paid after the April 30 filing of the bankruptcy case.  Therefore, at the time of the bankruptcy filing, the Forbearance Agreement was an executory contract, which may either be assumed or rejected in the Chapter 13 case.[1]

The Forbearance Agreement does not say what the ongoing payment amount would be after May 1, 2008, but provides that "[i]f the Borrower(s) fully comply with the terms of the Note, Mortgage and Forbearance Agreement and have otherwise provided written evidence of an insurable first lien position, then Ocwen shall agree to a loan modification with a new principal balance of $244,100.00 and fixed interest rate of 6.00%."  The first payment under the loan modification would be due on June 1, 2008, and the term would be for a period of 345 months.  The term of the original note was for 30 years, with the last payment due on February 1, 2037, so it would appear that the loan modification would not result in an extension of the term of the original obligation.[2]

---

[1] 11 U.S.C. § 365(a).  The Eighth Circuit has defined executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach of excusing the performance of the other."  *In re Craig*, 144 F.3d 593, 596 (8th Cir. 1998).

[2] In fact, it would appear that the loan modification has a term that is shorter than the original loan documents because the 345th payment under the loan modification would appear to

The Chapter 13 Plan filed by the Debtors seeks to, in effect, assume the Forbearance Agreement, by requiring Ocwen to modify the loan as provided in such Agreement.[3] The Plan proposes to continue making payments of $1,673, and does not provide for the curing of any arrearage. Payments under the original loan documents were $2,256.87 per month[4] and HSBC's Proof of Claim asserts an arrearage of $11,824.37. HSBC objects to the Plan, asserting that the Forbearance Agreement should be deemed terminated, and that the Plan should thus include terms consistent with the original loan documents and cure the arrearage.

HSBC does not contend that the Debtors' incorporating the terms of the Forbearance Agreement in their Chapter 13 Plan constitutes an impermissible modification of its rights under § 1322(b)(2) or any other Code provision. Indeed, forbearance agreements are generally enforceable in bankruptcy when the parties have used the contract to afford a mortgagor the opportunity to avoid foreclosure.[5]

Rather, HSBC asserts that it has the right to terminate the Forbearance Agreement on

---

be due on December 1, 2036.

[3] The Forbearance Agreement did not specify what the payment amount would be under the loan modification and HSBC did not supply any other documentation to evidence its terms. A mortgage calculator shows that a $244,100 loan, at 6 percent, for 345 months, results in a payment of $1,486.49, not including applicable escrow for taxes or insurance. Accordingly, since HSBC did not present any evidence to the contrary, the Court finds that $1,673.18 is the payment amount under the modified loan.

[4] *See* Fixed Rate Stepped Payment Note dated January 12, 2007, attached as an Exhibit to HSBC's Proof of Claim (Claim No. 2).

[5] *In re Riley*, 188 B.R. 191, 192 (Bankr. D. S.C. 1995) ("Generally, forbearance agreements are enforceable when the parties have used the contract to afford a mortgagor the opportunity to avoid foreclosure.").

two grounds. First, the Forbearance Agreement provides that it "is automatically terminated . . . [when] [t]he facts or circumstances relating to Borrower(s) [sic] financial condition, which caused Ocwen Loan Servicing to enter into this Agreement, are substantially changed." HSBC asserts that the filing of the bankruptcy petition was a substantial change in the Debtors' financial condition and that the Forbearance Agreement therefore automatically terminated upon the filing of the petition. The parties seem to agree that the filing of the petition changed the Debtors' financial condition for the better because, if the Debtors are successful in their Chapter 13 case, then they will discharge nearly $70,000 in unsecured debt by making no payments on such debt.[6] HSBC asserts that when it entered into the Agreement, it relied on information that the Debtors disclosed at the time which showed that they were unable to pay the mortgage while also servicing their other debt. According to HSBC, the filing of the bankruptcy results in their being able to afford the payments under the original loan documents and thus constitutes grounds for automatic termination of the Agreement due to change in financial condition.

However, HSBC offered no evidence as to what information it relied on when it agreed to the forbearance. Nor did it offer any evidence to demonstrate that the Debtors are able to make the increased payment, or to cure the arrearage, as provided in the Forbearance Agreement. In fact, the Debtors' schedules show that they are not able to make any payment

---

[6] The Plan provides for a zero percent dividend to unsecured creditors.

in addition to the one they agreed to in the Forbearance Agreement.[7] On that basis alone, the Objection must be overruled.

In addition, *ipso facto* clauses, which automatically terminate a contract in the event of a bankruptcy filing or a change in the debtor's financial condition, are generally not enforceable in bankruptcy. Section 365(e)(1) provides that:

> Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on –
>
> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
>
> (B) the commencement of a case under this title; or
>
> (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.[8]

This provision clearly evidences Congress' intent that such clauses are not to be enforced in bankruptcy.[9] Therefore, the bankruptcy filing itself does not constitute grounds for

---

[7] Official Form 22C, filed with the petition, shows a monthly disposable income of minus $286.60. The Schedules I and J show that the debtors have $613.78 available on a monthly basis to make a Chapter 13 plan payment of $600. (Doc. #1).

[8] 11 U.S.C. § 365(e)(1).

[9] *See* H.R. Rep. No. 95-595, at 348-49 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6304-05 (stating that § 365(e) "invalidates ipso facto[] or bankruptcy clauses," which "automatically terminate the contract . . . in the event of bankruptcy" and noting that the enforcement of *ipso facto* clauses "frequently hamper[] rehabilitation efforts."). *Cf.* 11 U.S.C. § 521(d) (effectively making *ipso facto* clauses enforceable if the debtor fails to timely reaffirm or redeem debts secured by personal property).

terminating the Forbearance Agreement.

HSBC cites *In re Riley*[10] for the proposition that it should not be bound by the Forbearance Agreement here because the Agreement's language was directed at circumstances that existed prepetition and contained no express language that the agreement survive a bankruptcy. *Riley* is distinguishable. In that case, the creditor sought to enforce a forbearance agreement's "waiver of the automatic stay" provision even though the debtors had cured the original default prepetition and then defaulted again. The court in *Riley* held that since language of that particular agreement was directed toward dealing with the default as it existed when the agreement was entered, and the agreement did not provide that it was perpetual in duration (such that it would apply to all future defaults), there was no basis for imposing the forbearance agreement's waiver of stay upon the debtors' subsequent default. Contrary to HSBC's apparent assertion, the *Riley* court did not hold that the forbearance agreement in that case was unenforceable because the bankruptcy filing constituted a change in circumstances from those that existed when the agreement was entered.

HSBC alternatively asserts that it is entitled to terminate the Forbearance Agreement because the Debtors were a few days late in making each of the three payments that were due under the Agreement. The Forbearance Agreement contains very clear language that time is strictly of the essence, that there is no grace period under the Forbearance Agreement, and that "even the slightest default shall be considered a material breach." However, HSBC

---

[10] 188 B.R. 191 (Bankr. D. S.C. 1995).

accepted each of the three tardy payments, and HSBC presented no evidence to suggest that it had any intent to terminate the Agreement based on those defaults. Rather, the evidence suggests that HSBC decided to terminate the Agreement because of the bankruptcy filing and proposed Plan treatment. I find, therefore, that HSBC waived its right its right to terminate based on the three tardy payments.[11]

Although not raised as an issue in its objection to confirmation or suggestions in support thereof, counsel for HSBC mentioned at the hearing on its objection that the Forbearance Agreement may be void for lack of consideration on the part of the Debtor. Thereafter, the Court held a chambers teleconference with counsel for both parties to clarify whether that was an issue in the case, and subsequently offered the parties the opportunity to submit briefs on that issue. In their Suggestions filed in response to that teleconference, the Debtors mention several forms of consideration they purportedly gave in support of the Forbearance Agreement, including the Forbearance Agreement's initial $2,257 initial payment, which they refer to as a "down payment" (as does the Forbearance Agreement), even though that payment was applied to the balance on the existing obligation. In its Supplemental Brief filed in response to the court's offer to brief the issue of consideration, HSBC does not argue that the Forbearance Agreement is void for lack of consideration on the *Debtors*' part; rather, it argues solely that *HSBC* gave valuable consideration for the Agreement, in the form of its forbearing from exercising its right to foreclose under the

---

[11] I do not find at this point, however, that HSBC's waiver of the three tardy payments constitutes a waiver of the timeliness requirement going forward.

original loan documents,[12] which the Debtors do not dispute constitutes consideration. Consequently, because it appears that neither side is arguing that the other failed to give consideration to support the Forbearance Agreement, the Court will not find to the contrary.

Finally, although not raised by HSBC, I note that § 365(c)(2) provides that the trustee (or debtor) may not assume an executory contract to make a loan, or extend other debt financing or financial accommodations.[13] Although the Forbearance Agreement was executory when the Petition was filed, based on the evidence offered, I find that it was not a contract to make a loan or extend other debt financing or financial accommodations because it was simply an agreement to waive the existing arrearage and to restructure an existing loan which had the same (or later) expiration date.[14]

ACCORDINGLY, the Objection to Confirmation of HSBC Bank USA, N.A., as Indenture Trustee for the registered Noteholders of Renaissance Home Equity Loan Trust

---

[12] *See Drury v. Missouri Youth Soccer Ass'n, Inc.*, ___ S.W.3d ___, 2008 WL 2651581 at *12 (Mo. Ct. App. July 8, 2008) ("The forbearance to enforce a legal right such as filing a lawsuit can constitute bargained for consideration.") (citing *Holt v. Jamieson*, 847 S.W.2d 194, 197 (Mo. Ct. App. 1993), and *Missouri Farmers Ass'n, Inc. v. Barry*, 710 S.W.2d 923, 926 (Mo. Ct. App. 1986)); *Farmers & Merchants State Bank v. Higgins*, 89 P.2d 916 (Kan. 1939) ("The giving of further time for the payment of an existing debt by a valid agreement . . . is a valuable consideration. . . .").

[13] 11 U.S.C. § 365(c)(2). "The term 'financial accommodation' has been defined as the extension of money or credit to accommodate another," *In re Sun Runner Marine, Inc.*, 945 F.2d 1089, 1092 (9th Cir. 1991) and must be "to or for the benefit of the debtor." 11 U.S.C. § 365(c)(2). The Forbearance Agreement was not such an accommodation.

[14] "[C]ourts strictly construe the terms 'loan', 'debt financing' and 'financial accommodation' narrowly, and § 365(c)(2) does not apply to all contracts that involve the extension of credit." *In re Emerald Forest Const., Inc.*, 226 B.R. 659, 664 (Bankr. D. Mont. 1998).

2007-1 (HSBC) is OVERRULED.

    IT IS SO ORDERED.

/s/ Arthur B. Federman<br>Bankruptcy Judge

Date: 8/8/2008